UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DAKOTA LEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00036-SEB-KMB |
| | ) | |
| JEREMY T. MULL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Now before the Court is Defendants' Motion to Dismiss [Dkt. 34], filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Dakota Lee Smith ("Plaintiff" or "Dakota") brings this action against Defendants Clark County Prosecutor Jeremy T. Mull and former Deputy Prosecutor Timothy Curry, seeking recovery for alleged violations of her civil rights under 42 U.S.C. § 1983 as well as a state law malicious prosecution claim.[2] For the reasons detailed below, we <u>GRANT</u> without prejudice Defendants' Motion to Dismiss as to Plaintiffs' federal claims and take under advisement her state law malicious prosecution claim.

---

[1] Defendants have also filed a Motion to Strike [Dkt. 40], requesting that the Court strike as untimely Plaintiff's response to their motion to dismiss. Although Plaintiff filed her response nine days beyond the deadline without first requesting an extension of time, Defendants have failed to demonstrate whether and how they suffered prejudice as a result of this late submission. Accordingly, we <u>DENY</u> Defendants' motion to strike. Plaintiff's counsel is reminded, however, that in the future, they are expected to request an extension of time should they be unable to meet a court deadline.
[2] Plaintiff initially sued several other defendants in this litigation but has since settled with all defendants other than Defendants Mull and Curry.

1

## Factual Background

On February 11, 2020, Plaintiff's sister, Taren Grace Smith ("Taren"), was arrested on drug charges by Jeffersonville Police Department officials who were assisting Clark County law enforcement officials in a narcotics investigation. Taren instead of providing her own true name during the booking process, gave the name of her sister, Dakota Lee Smith ("Dakota"), who is Plaintiff in this lawsuit before us. After bond was posted, Taren, still pretending to be Dakota, was released and a criminal summons for the initial hearing was issued in the name of Dakota L. Smith.

Dakota appeared at the initial hearing on May 20, 2020, was appointed a public defender, and entered a plea of not guilty, informing the court that she was wrongly charged. Following that hearing, Dakota traveled to the Jeffersonville Police Department to file a report that Taren had erroneously and without permission used Dakota's identifying information during the February arrest.

On June 29, 2020, Dakota provided identifying information, including a photograph of herself and a description of her tattoos, to her defense attorney, who forwarded via email the information to then-Deputy Prosecutor Curry to allow for a comparison of that information with the booking photograph from Taren's arrest in February 2020. Mr. Curry replied to Dakota's defense attorney on July 2, 2020, indicating that he would follow up on the issue, including consulting the investigator who worked for the Clark County Prosecutor's Office. By August 17, 2020, when Mr. Curry had not followed up, Dakota's public defender again emailed Deputy Prosecutor Curry regarding the misidentification. Still Mr. Curry took no action to correct the error

regarding the charges against Dakota or to notify the Clark Circuit Court of the misidentification.

At the time of these events, Prosecutor Mull had in effect a policy requiring his deputy prosecutors to consult with him to obtain his approval to dismiss any case. Pursuant to this policy, prior approval from Prosecutor Mull was required even in circumstances in which it was apparent under the law or facts or ethical rules that a case should be dismissed. Dakota alleges that, in light of this policy and the fact that the criminal case against her was not dismissed after she presented her identifying information to then-Deputy Prosecutor Curry, it is reasonable to believe that Mr. Curry had presented this information to Prosecutor Mull and he nonetheless declined to dismiss the case.

A month later, on September 14, 2020, Taren died. Approximately one week thereafter, on September 21 or 22, 2020, Dakota filed tort claim notices with Prosecutor Mull and Deputy Prosecutor Curry based on their refusal to correct the erroneous case records. On September 25, 2020, rather than dismiss the criminal charges against Dakota, Mr. Curry filed a motion to amend the charges against her to include the name of Taren Grace Smith, thereby updating the case caption to read, "Taren G. Smith a.k.a. Dakota Smith." Am. Compl. at 4. Mr. Curry attached to his motion to amend a supplemental probable cause affidavit signed by Investigator Donald Brown of the Clark County Prosecutor's office that included references to the May 20, 2020 police report made by Dakota Lee Smith indicating that her sister had impersonated her during the

February 2020 arrest. However, the supplemental probable cause affidavit omitted any reference to the fact that Taren Grace Smith was deceased.

At a hearing held on October 12, 2020 to address Mr. Curry's motion to amend the case caption, Dakota's defense attorney informed the judge that Taren had died, and presented the court with a copy of Taren's obituary. In response, Mr. Curry argued that "the obituary and any Facebook posts regarding the death of Taren Grace Smith could have been fabricated," suggesting that Dakota or her counsel should obtain Taren's death certificate to prove her sister's death. Am. Compl. at 4. The following day, October 13, 2020, the State moved to dismiss without prejudice the criminal charges against Dakota, which motion was granted on October 14, 2020.

Prior to the dismissal of the criminal charges, Dakota lost her job with United Airlines due to the pending criminal charges on her record. She struggled to obtain new employment given the pending drug dealing charge, which difficulty her defense attorney shared with Deputy Prosecutor Curry during the course of these events. Although the charges were eventually dropped and never reinstated, Dakota's name still is reflected in the case caption and the prior charges continue to appear in public record search results.

On December 31, 2021, Plaintiff filed her complaint in Clark Superior Court, which case was removed to our court on March 22, 2022. Plaintiff amended her complaint on May 11, 2022, alleging that the "deliberate indifference" of Defendants Mull and Curry "led to the false charges filed against Plaintiff and violation of her right to be free from malicious prosecution" and that Prosecutor Mull's policy requiring his approval before any case could be dismissed "fostered an environment where deliberate

4

indifference to the facts of her circumstance were allowed to continue to the point where she lost her employment and whereby Deputy Prosecutors lacked the authority to take corrective action in the face of overwhelming evidence that they had indeed identified, charged and prosecuted the wrong individual."[3] Am. Compl. at 7. Defendants Mull and Curry filed their motion to dismiss on May 25, 2022, which motion is now fully briefed and ripe for ruling.

## Legal Analysis

I. **Applicable Legal Standard**

Defendants filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this procedural context, the Court must accept as true all well-pled factual allegations included in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). The complaint must nonetheless "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the

---

[3] In her response, Plaintiff abandoned her defamation, intentional and negligent infliction of emotional distress, and false imprisonment claims. Accordingly, Defendant's Motion to Dismiss is <u>DENIED AS MOOT</u> as to these claims and we address them no further in this Order.

5

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Discussion

Defendants' primary argument in support of dismissal is that they are entitled to absolute prosecutorial immunity. Even if not entitled to absolute immunity, they argue that Plaintiff's claims fail because the amended complaint does not allege any personal involvement by Prosecutor Mull and fails to allege sufficient facts to state a claim under Rule 12(b)(6). We address each of these arguments in turn below.

### A. Plaintiff's Section 1983 Claim

#### 1. Prosecutorial Immunity

Defendants' contention that they are entitled to dismissal of the claims against them based on their absolute prosecutorial immunity is unavailing at this early stage of the litigation. Prosecutors are entitled to absolute immunity for actions taken within the scope of their function as an advocate—such as when initiating criminal prosecutions and making decisions concerning the conduct of trial and the presentation of evidence. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). However, prosecutors are not absolutely immune for every official action they undertake in their prosecutorial role. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Prosecutors are entitled to qualified immunity only for actions within the prosecutor's role as administrator or investigator—such as when giving legal advice to police or "searching for the clues and corroboration that might give [them] probable cause to recommend that a suspect be arrested …." *Id.* at 273; *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (absolute immunity

6

does not apply when prosecutor advises police during a criminal investigation, makes statements to the press, or acts as a complaining witness in support of a warrant application) (collecting cases); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) (prosecutor not entitled to absolute or qualified immunity for pre-prosecution fabrication of evidence later introduced at trial). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Supreme Court has applied a "functional approach" in determining whether the actions of government officials are entitled to absolute or qualified immunity which considers the "'nature of the function' the prosecutor performed, not simply the position [he] held." *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022) (quoting *Buckley*, 509 U.S. at 269). Thus, whether a prosecutor is entitled to absolute immunity "hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012).

Here, the amended complaint alleges that Deputy Prosecutor Curry was personally presented with evidence of Dakota's misidentification, including her photograph allowing it to be compared to Taren's book-in photograph, and that, after receiving such evidence, Deputy Prosecutor Curry told to Dakota's attorney that he would have an investigator from the prosecutor's office look into the matter; that, he apparently failed to do. The

7

amended complaint further alleges that, following Taren's death, Deputy Prosecutor Curry made statements to the judge implying that Taren's obituary and Facebook posts regarding her death could have been fabricated, suggesting that Dakota should be required to obtain Taren's death certificate to prove that her sister had in fact died. Finally, the amended complaint alleges that Deputy Prosecutor Curry and "others within the Clark County Prosecutor's Office went to Prosecutor Mull with the information" regarding Plaintiff's misidentification but that no corrective action was taken "in the face of overwhelming evidence that they had indeed identified, charged and prosecuted the wrong individual." Am. Compl. ¶ 3(8).

Clearly, the issue of prosecutorial immunity cannot be resolved at the motion to dismiss stage because it is not clear from the allegations in the Amended Complaint the extent to which Defendants were acting in their role as advocates and the extent to which they were acting in an investigatory or another non-advocacy function that would not entitle them to absolute immunity. Assuming the allegations in the Amended Complaint are true and drawing all inferences in Plaintiff's favor, as we are required to do at this stage of the litigation, we find that the factual record must be further developed to enable the Court to determine whether Defendants were acting in a prosecutorial, administrative, or investigative capacity with regard to Plaintiff's alleged injuries, and what immunity, if any, applies to their conduct.

### 2. Prosecutor Mull's Personal Involvement

Defendants further argue that "[t]here are insufficient factual allegations to plausibly infer that Prosecutor Mull was personally involved in the alleged deprivations

of federal law." Dkt. 34 at 9. For "a defendant to be liable under section 1983, []he must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citation omitted). "Consequently, a claim will not survive a motion to dismiss unless it 'plead[s] that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 676). "Thus, a supervisory … official may only be personally liable under § 1983 'if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Riley El v. Pritzker*, No. 19 C 02002, 2022 WL 4329030, at *2 (N.D. Ill. Sept. 19, 2022) (quoting *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019)). This means the official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye …." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quotation marks and citation omitted).

Here, Plaintiff has alleged that Prosecutor Mull maintained a policy that any dismissal of criminal charges by his deputies required his direct consultation and approval, regardless of any other circumstances. Plaintiff further alleges that Prosecutor Mull was likely presented with information regarding her misidentification but failed to approve the dismissal of the charges against her until he was served with her notices of tort claims, which delay caused her significant harm. Accepting these facts as true, as we are required to do on a motion to dismiss, a reasonable inference arises from these allegations that Prosecutor Mull "knew" about the challenged conduct and, through his inaction, either "condone[d]" or "turn[ed] a blind eye" to it. Accordingly, at this early

9

stage of the litigation, we find these allegations sufficient to support Prosecutor Mull's personal involvement, such that a dismissal of Plaintiff's § 1983 claim against him on that basis is inappropriate.

### 3. Failure to State a Claim

Defendants next seek dismissal of the amended complaint on grounds that it fails to state any cognizable claim under § 1983. In response, Plaintiff maintains that she has adequately alleged a Fourteenth Amendment due process claim based on her malicious prosecution.[4] Specifically, she argues that, despite having been presented evidence of her misidentification, Defendants continued a "baseless prosecution" against her, causing her to lose her job and live in constant fear of a potential twelve-year prison sentence as well as being subjected to the restrictions of her bail conditions throughout the pendency of the case against her. While Plaintiff "acknowledge[s] that freedom from malicious prosecution is not a constitutionally-based right," she claims that "[d]ue process demands some sort of recognition of overwhelming evidence that a particular prosecution should be ceased when faced with an incorrect identity of the Defendant" and failure to end such a prosecution "amounts to a continuance of a prosecution without due process of law,

---

[4] Plaintiff concedes that she was not seized, which is to say, not arrested; thus, she cannot bring a Fourth Amendment malicious prosecution claim. *See Thomson v. Clark*, 142 S.Ct. 1332 (2022) (recognizing a Fourth Amendment malicious prosecution claim and stating that "[b]ecause this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff"). In this way, this case differs from *White v. Mull*, No. 4:22-cv-00028-JMS-KMB, a similar action brought against these same defendants in which the plaintiff, unlike Dakota, *was* seized. Our colleague, Judge Jane Magnus-Stinson, recently denied the defendants' motion to dismiss in that case, permitting the plaintiff's Fourth Amendment malicious prosecution claim to proceed. *See id.* at Dkt. 53.

exposing [Plaintiff] to potential loss of liberty contrary to the due process clause of the Fourteenth Amendment." Pl.'s Resp. at 6–7.

As Plaintiff apparently concedes, the Supreme Court has expressly held that there is no substantive due process right to be free from malicious prosecution. *Albright v. Oliver*, 510 U.S. 266, 271–75 (1994). As the Seventh Circuit recently observed, however, "[w]hether the Fourteenth Amendment's procedural due process component ensures a right to be free from malicious prosecution is an open question."[5] *Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022) (citing *Thompson* 142 S. Ct. at 1337 n.2). Assuming that Plaintiff is entitled to pursue such a claim, to state a Fourteenth Amendment procedural due process claim for malicious prosecution, she "must demonstrate that (1) [s]he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) [s]he was deprived of liberty." *Glenn v. City of Hammond*, No. 2:18-CV-150-TLS-JEM, 2021 WL 4078063, at *12 (N.D. Ind. Sept. 7, 2021) (quoting *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014)). It is on this third prong that Plaintiff's complaint falters.

As previously noted, Plaintiff concedes that she was not "seized, incarcerated, jailed or imprisoned," so there was never any restraint on her physical liberty. She alleges that she lost her job because of the charges against her and had trouble securing a

---

[5] Defendants have not raised qualified immunity in this context in their motion to dismiss. Accordingly, we do not address whether, given this lack of clarity in the case law regarding the viability of a Fourteenth Amendment procedural due process claim for malicious prosecution, it can be shown that such right was "clearly established" at the time of Defendants' challenged acts.

new position, but "[t]he Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, not the individual's right to a specific job." *Younge v. Berman*, No. 3:22-cv-50099, 2023 WL 2374781, at *3 (N.D. Ill. Mar. 6, 2023) (citing *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)). Although the Seventh Circuit recognizes "stigma plus claims," which involve harm to an individual's "good name, reputation, honor or integrity in a way that ma[kes] it virtually impossible … to find new employment in [the plaintiff's] chosen field," *id.* (quoting *McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th Cir. 2008)), the allegations in Plaintiff's complaint do not rise to this level. Accordingly, we find that she has not adequately alleged a protectible occupational liberty interest.

In her response brief, Plaintiff cursorily references her bail conditions as potentially implicating a constitutionally protected liberty interest. It is true that some courts have recognized that "[p]retrial release and detention decisions implicate a liberty interest—conditional pretrial liberty—that is entitled to procedural due process protections." *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018). Plaintiff's complaint, however, contains no factual allegations regarding her bail conditions. In the absence of any facts regarding the specific conditions to which she was subject, we cannot hold that she has plausibly alleged that she was deprived of a cognizable liberty interest on this basis.

In sum, while we are not unsympathetic to the hardships Plaintiff faced because of the charges that were brought against her, she has failed to adequately allege a plausible claim that Defendants' actions violated the Fourteenth Amendment's due process clause

because she has omitted any claimed violation of a cognizable liberty interest. *See Patton v. Indiana Univ. Bd. of Trustees*, No. 1:20-cv-00699-TWP-MJD, 2022 WL 3716522, at *21 (S.D. Ind. Aug. 29, 2022) ("[The plaintiff] has not alleged a violation of his liberty or property interests, and therefore cannot sustain a malicious prosecution claim under the Fourteenth Amendment."). Accordingly, Defendants are entitled to dismissal of Plaintiff's § 1983 claim as it is currently pled. We will, however, provide Plaintiff an opportunity to file an amended complaint to attempt a resolution of the deficiencies identified above, if possible.

### B. State Law Malicious Prosecution Claim

Defendants have also moved to dismiss Plaintiff's state law malicious prosecution claim. When a district court dismisses all claims over which it has original jurisdiction, as we have done here, the district court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Carlsbad Tech., Inc. v. HIF Bio., Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction …."). Because we have dismissed Plaintiff's only federal claim without prejudice, permitting her the opportunity to replead that claim, if possible, we reserve a ruling on Defendants' motion to dismiss as to the state law malicious prosecution claim and as to whether to exercise supplemental jurisdiction over that claim until an amended complaint is filed and survives further analysis as to its legal sufficiency, or the deadline to do so has passed.

### III.     Conclusion

For the reasons detailed above, we <u>DENY</u> Defendant's Motion to Strike [Dkt. 40] and <u>GRANT</u> without prejudice Defendants' Motion to Dismiss [Dkt. 34] as to Plaintiff's federal claims and permit her <u>twenty-one (21) days</u> from the date of this entry within which to file an amended complaint that resolves the deficiencies cited in this entry, if possible. As for her state law malicious prosecution claim, it shall remain under advisement until further order of the Court.

IT IS SO ORDERED.

Date:    3/21/2023

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Michaelia S. Gilbert
Law Office of Michaelia S. Gilbert, LLC
michaelia@msgilbertlawllc.com

William A. Gray
ATTORNEY AT LAW
williamgray@williamgraylaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Patrick Muldoon
BARNES MALONEY PLLC
pmuldoon@sbmkylaw.com

Justin M. Schaefer
BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

Christine Clark Sims
KIGHTLINGER & GRAY LLP
csims@k-glaw.com